IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| SAFEWORKS, L.L.C., a Washington Limited Liability Company, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) 4:16-CV-1057<br>) |
| STEPHEN SEAMAN, an Individual. | )<br>) |
| Defendant. | ) |

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Comes now Plaintiff, SafeWorks, LLC, a Washington Limited Liability Company ("SafeWorks"), and for its Verified Complaint for Injunctive Relief and Damages against Defendant, Stephen Seaman ("Seaman"), states to the Court as follows:

## PARTIES, JURISDICTION AND VENUE

1. SafeWorks is and was at all times relevant hereto a limited liability company organized under and existing pursuant to the laws of the State of Washington and none of its members are citizens of the State of Missouri.

2. Seaman is an individual residing in and is a citizen of the State of Missouri.

3. This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332(a) in that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

4. Venue properly lies in this Court pursuant to 28 U.S.C. § 1391 in that Seaman resides in this District and a substantial part of the events giving rise to this claim occurred in this District.

## SAFEWORKS AND ITS EMPLOYENT OF SEAMAN

5.  SafeWorks, through its Spider division, is a nation-wide, industry leader in the manufacture and distribution of powered suspended access and scaffolding products, including traction and drum material hoists, work cages and baskets, modular work platforms, rigging equipment and supplies, and fall protection equipment solutions and related equipment (hereinafter collectively referred to as "suspended access and scaffolding products").

6.  SafeWorks markets, rents and sells its products and services to construction companies, building and facility maintenance companies and construction and rehabilitation project sites throughout the country.

7.  Upon information and belief, prior to being hired by SafeWorks, Seaman had no previous training, experience or knowledge with respect to suspended access and scaffolding products or the marketing, sale and rental of such products.

8.  On or about May 14, 2013, SafeWorks hired Seaman as a Sales Trainee, and Seaman entered into SafeWorks' confidential and proprietary sales training program at SafeWorks' headquarters in the State of Washington, during which time SafeWorks was compensating Seaman as an employee and providing him with a place to live in Washington.

9.  Phase I of SafeWorks' sales training program is an intensive, four-month program through which Seaman was provided with and obtained confidential and commercially valuable information with respect to suspended access and scaffolding products, including SafeWorks' products and services, as well as SafeWorks' sales and pricing strategies and techniques.

10. In or around September, 2013, Seaman was promoted into Phase II of SafeWorks' training program and was transferred to Safeworks' branch in Houston, Texas, as an Inside Sales Representative.

11. In or around December, 2013, Seaman had successfully completed SafeWorks' training program and was promoted and transferred to St. Louis, Missouri, as a District Sales Representative in the St. Louis District.

12. As a District Sales Representative in the St. Louis District, Seaman had sales responsibilities for geographical areas within the portions of the States of Missouri, Illinois, Indiana, Kentucky, Arkansas and Tennessee.

13. As a District Sales Representative in the St. Louis District, Seaman was introduced to and given the opportunity to develop significant and ongoing relationships on behalf of SafeWorks with SafeWorks' contractors and suppliers and its existing and potential customers, including construction companies, building and facility maintenance companies, building and facility owners and others located in and/or engaged in construction, rehabilitation or maintenance projects within the areas served by the St. Louis District.

14. Upon information and belief, prior to being promoted and transferred to St. Louis as a District Sales Representative for SafeWorks, Seaman had never previously lived or worked in the St. Louis area and had no contacts, familiarity or relationship with any contractor, supplier, customer or potential customer of SafeWorks or any other manufacturer or distributor of suspended access and scaffolding products.

15. Prior to being promoted to the position of District Sales Representative in the St. Louis District and as a condition of receiving such promotion, Seaman and SafeWorks entered into and executed a Confidentiality and Non-Competition Agreement ("Agreement"), a true and correct copy of which is attached hereto as Exhibit 1.

16. As set forth in Paragraphs 1 and 2 the Agreement, Seaman recognized and acknowledged that he would be given access to Confidential Information (as defined therein) of

SafeWorks and its clients and customers, and Seaman expressly agreed that he would not "use, copy, disclose, transmit, reproduce, quote or summarize" such Confidential Information except for the purpose of performing his duties with SafeWorks. Paragraph 2 expressly provides that its terms extend for two years from the termination of Seaman's employment.

17. As set forth in Paragraph 5 of the Agreement, Seaman acknowledged that he would acquire intimate knowledge of SafeWorks' confidential and proprietary information, including "sales and product strategies, customers, prospects, product offerings, pricing, financial performance, business plans and the like."

18. In Paragraph 5.1 of the Agreement, Seaman expressly agreed that during the period of employment and for 12 months thereafter (the "Restricted Period") he would not "in any competitive capacity work or consult, directly or indirectly, for any person or entity engaged in the sale of products or services that compete with the existing or planned business of [SafeWorks]," including any "self-employment, employment by another, serving as a consultant, and/or acting as a sales agent to make sales of products or services competitive with those of [SafeWorks]" within the Territory in which Seaman had sales responsibility while in SafeWorks' employ. Seaman's Territory is expressly identified by reference to specific postal zip codes as set forth in Exhibit A to the Agreement.

19. In Paragraph 5.2 of the Agreement, Seaman expressly agreed that during the same Restricted Period he would not directly or indirectly solicit or entice any contractor, supplier, customer, client or prospective customer or client Seaman had any dealings with or had called upon or had solicited business from while in the employ of SafeWorks to cease, terminate or reduce any relationship with SafeWorks or to divert any business from SafeWorks. Seaman

further agreed that he would not disclose the names, addresses, telephone numbers, compensation or arrangement between SafeWorks and any such persons or entities.

### SEAMAN'S RESIGNATION AND POST-EMPLOYMENT ACTIVITIES

20. On or about June 1, 2016, Seaman abruptly resigned his employment with SafeWorks.

21. At the time that Seaman tendered his resignation, SafeWorks expressly and specifically reminded Seaman of his obligations under the Agreement.

22. Upon information and belief, Seaman resigned from his employment with SafeWorks so that he could become an employee of or otherwise engage in sales activities on behalf of RP Ventures LLC, d/b/a Ace Rental and Sales ("Ace Rental").

23. In connection with his resignation, Seaman indicated that his new employer was planning on making a substantial investment in the type of suspended access and scaffolding products that are marketed, sold and rented by SafeWorks.

24. Upon information and belief and based upon information contained on its website, Ace Rental is a St. Louis-based company that engages in the rental and sale of suspended access and scaffolding products and/or other products and services that compete with the products and services marketed, sold and rented by SafeWorks.

25. Upon information and belief, Ace Rental markets, sells and rents its products and services to customers and potential customers, including construction companies, building and facility maintenance companies, building and facility owners and others located in and/or engaged in construction, rehabilitation or maintenance projects within the Territory served by the St. Louis District and with whom Seaman had dealings and/or from whom Seaman's solicited business while in the employ of SafeWorks.

26. Based on an analysis of the laptop computer issued to Seaman by SafeWorks and used by Seaman during his employment with SafeWorks, shortly before and in anticipation of leaving SafeWorks' employ, Seaman copied, reproduced and downloaded enormous amounts of SafeWorks' Confidential Information by attaching four (4) separate USB electronic storage devices to that laptop on Memorial Day, May 30, 2016. Two of those devices have now been returned to SafeWorks, but both devices appear to have been deleted after May 30, 2016, so as to make it more difficult to determine what information had been stored thereon.

27. Based on the analysis of that laptop computer and the USBs, after attaching the aforesaid USB devices, Seaman then deleted over 400 documents from that laptop on Memorial Day, within 24 hours of informing SafeWorks on May 31 that he was considering leaving its employ. Traces of some if not all of those documents appear on at least one of the aforesaid USB devices used by Seaman. A true and correct listing of the deleted files from May 30 is attached hereto as Exhibit 2.

28. Upon information and belief and based upon information provided by Seaman, information on at least one of the aforesaid USB devices was uploaded to a Dropbox with a user name of sseaman@acerentalandsales.com. An initial analysis of that Dropbox indicates that confidential information of SafeWorks, including some or all of the previously deleted items, are now located in that Dropbox and are apparently available to both Seaman and Ace Rental.

29. Upon information and belief and the analysis described above, in anticipation of and since leaving SafeWorks' employ, Seaman has used, copied, disclosed, transmitted, reproduced, quoted or summarized Confidential Information of SafeWorks for his own benefit and/or for the benefit of Ace Rental.

30. Upon information and belief, since leaving SafeWorks' employ on June 1, 2016, Seaman has continued to have communications and dealings with and solicited business from contractors, suppliers, customers, clients and/or prospective customers and clients that Seaman had dealings with, had called upon and/or had solicited business from while in the employ of SafeWorks and has attempted to solicit and entice such persons and entities to cease, terminate and/or reduce their relationship with SafeWorks and/or to divert business from SafeWorks.

### SAFEWORKS' NEED FOR AND ENTITLEMENT TO INJUNCTIVE AND OTHER RELIEF

31. By letter dated June 10, 2016, counsel for SafeWorks provided Seaman with an additional copy of the Agreement, reminded him of his obligations thereunder, and requested Seaman or his counsel to respond in writing by June 14, 2016, confirming that he is not and will not be employed by Ace Rental in the Territory during the Restricted Period, that he has not and will not disclose or use any of SafeWorks' Confidential Information, and that he has returned or will immediately return any such information in his possession to SafeWorks. A true and correct copy of the aforesaid letter to Seaman is attached hereto as Exhibit 3.

32. To date, neither SafeWorks nor its counsel has received any response to the aforesaid letter to Seaman from Seaman or any counsel representing Seaman.

33. By letter dated June 10, 2016, counsel for SafeWorks also provided a copy of the Agreement to Ace Rental and requested Ace Rental or its counsel to respond in writing by June 14, 2016, confirming that Ace Rental is not and will not be employing Seaman in the Territory during the Restricted Period and that Ace Rental has not allowed and will not allow Seaman to disclose or use any of SafeWorks' Confidential Information for Ace Rental's benefit. A true and correct copy of the aforesaid letter to Ace Rental is attached hereto as Exhibit 4.

34. Although counsel for Ace Rental responded to the aforesaid letter, to date, neither SafeWorks nor its counsel has received the written confirmation from Ace Rental or its counsel as requested.

35. SafeWorks has been informed and upon information and belief reasonably believes that Seaman has already contacted existing contractors and/or customers of SafeWorks with respect to specific projects within the Territory that Seaman learned of and was working on while in SafeWorks' employ and has utilized information that he obtained directly as a result of his employment with SafeWorks in an effort to divert work away from SafeWorks and otherwise interfere with SafeWorks' relationship with such contractors and customers.

36. Seaman's conduct as alleged herein is in direct violation of his ongoing duties and obligations under the Agreement and under the Uniform Trade Secrets Act as adopted in both Missouri (§§ 417.450, et seq., R.S.Mo.) and Washington (WASH. REV. CODE, § 19.108.011, et seq.).

37. The confidentiality, non-solicitation and non-competition provisions of the Agreement are valid and enforceable in that they afford reasonable protection to SafeWorks and do not unreasonably restrain Seaman's ability to obtain reasonable employment.

38. As a direct and proximate result of Seaman's conduct as alleged herein, SafeWorks has suffered and will continue to suffer economic damages.

35. SafeWorks is subject to irreparable harm and there is no adequate remedy at law for Seaman's violation and breach of the Agreement and the Uniform Trade Secrets Acts, and injunctive relief is appropriate in that monetary damages will be difficult to calculate if Seaman is allowed (i) to perform services for Ace Rental or any other direct competitor of SafeWorks in the Territory, (ii) to continue to have dealings with, solicit business from and interfere with

SafeWorks' relationship with contractors, suppliers, current and potential customers or others that Seaman had dealings with while in the employ of SafeWorks and/or (iii) to utilize and/or disclose SafeWorks' Confidential Information.

36.  The Agreement expressly provides that, in any action arising under the Agreement, the prevailing party shall be entitled to recover its attorneys' fees and court costs.

37.  Seaman's conduct as alleged herein was and is willful, malicious and outrageous because of his evil motive and reckless indifference to the rights of others so as to authorize and warrant an award or punitive and/or exemplary damages and an award of attorneys' fees to SafeWorks under the Uniform Trade Secrets Acts.

WHEREFORE, Plaintiff, SafeWorks LLC, respectfully prays that judgment be entered in its favor and against Defendant, Stephen Seaman, and that this Court:

1. Issue its Temporary Restraining Order against Defendant, Stephen Seaman, restraining, enjoining and prohibiting Seaman, and all those in active concert or participation with him, from engaging in the following conduct:

    a. In any way directly or indirectly engaging in any competitive capacity or working or consulting for any person or entity, specifically including but not limited to Ace Rental and Sales, engaged in the sale of products or services that compete with the existing or planned business of SafeWorks, including serving as a consultant and/or acting as a sales agent to make sales of products or services competitive with those of SafeWorks, within the Territory in which Seaman had sales responsibility while in SafeWorks' employ, as more particularly described in Exhibit A to the Agreement;

b. In any way directly or indirectly soliciting or enticing any contractor, supplier, customer, client or prospective customer or client that Seaman had any dealings with, had called upon or had solicited business from while in the employ of SafeWorks to cease, terminate or reduce any relationship with SafeWorks or to divert any business from SafeWorks and/or disclosing the names, addresses, telephone numbers, compensation or arrangement between SafeWorks and any such persons or entities;

c. In any way directly or indirectly using, copying, disclosing, transmitting, reproducing, quoting or summarizing any Confidential Information of SafeWorks, and further Ordering Seaman to immediately return all copies (and all devices containing copies) of any such information in any format to SafeWorks; and

d. Engaging in any other conduct in violation and breach of the terms of the Confidentiality and Non-Competition Agreement between Seaman and SafeWorks and/or the Uniform Trade Secrets Acts of Missouri and/or Washington;

2. Issue an order for a hearing on SafeWorks' request for a preliminary injunction, returnable on a date certain;

3. Issue a preliminary injunction after such hearing preliminarily enjoining, restraining and prohibiting Seaman from engaging in any of the conduct set forth in Paragraph 1, above, until a trial on the merits of this case;

4. Issue a permanent injunction after trial permanently enjoining, restraining and prohibiting Seaman from engaging in any conduct set forth in Paragraph 1(a) and (b),

above, for a period of at least twelve (12) months from the termination of Seaman's employment with SafeWorks, and from engaging in any of the conduct set forth in Paragraphs 1(c), above, for a period of two (2) years from the termination of Seaman's employment with SafeWorks;

5. Enter an award of damages in favor of SafeWorks in an amount sufficient to fairly and justly compensate SafeWorks for actual damages incurred and to be incurred as a direct and proximate result of Seaman's conduct:

6. Enter an award of punitive and/or exemplary damages in favor of SafeWorks as provided under the Uniform Trade Secrets Acts:

7. Award to SafeWorks its costs incurred herein, including reasonable attorney's fees; and

8. Grant such other and further relief as this Court deems just and proper.

                                STINSON LEONARD STREET LLP

By   */s/ James D. Bass*
       James D. Bass, 32913MO
       7700 Forsyth Boulevard, Suite 1100
       St. Louis, Missouri 63105
       Tel: (314) 719-3044
       Fax:  (314) 259-3902
       james.bass@stinson.com

       *Attorneys for Plaintiff*

_____
Michael Gibbs
Area Director-Central Region
Spider Division of SafeWorks LLC

STATE OF ILLinois )
                  ) SS.:
COUNTY OF Cook.   )

Comes now Michael Gibbs, Area Director-Central Region, Spider Division of SafeWorks, LLC, being duly sworn upon his oath, and states that the foregoing allegations contained in the Verified Complaint are true and correct to the best of his knowledge, information and belief.

Subscribed and sworn to before me on this 29 day of June, 2016.

_____
Notary Public

My Commission Expires:
02/06/20

OFFICIAL SEAL
BARBARA L CHIODO
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:02/06/20